Harold C. Smith and Maude A. Smith v. Commissioner. Kenneth P. Martin and Helen A. Martin v. Commissioner.
Smith v. Commissioner
Docket Nos. 74792, 74822.
United States Tax Court
T.C. Memo 1961-42; 1961 Tax Ct. Memo LEXIS 305; 20 T.C.M. (CCH) 232; T.C.M. (RIA) 61042; February 21, 1961
*305 Held, petitioners did not hold the lots sold in 1955 primarily for sale to customers in the ordinary course of a trade or business. Stanley G. Barker, Esq., 340 Main St., Worcester, Mass., for the petitioners. Charles T. Shea, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies in petitioners' income taxes for 1955 in the amounts of $1,240.94 (Docket No. 74792) and $1,334.04 (Docket No. 74822). The issue in these consolidated cases is whether the gain realized from the sale of certain lots in 1955 was derived from the sale or exchange of a capital asset and therefore taxable as capital gain, or was derived from the sale of property held for sale to customers in the ordinary course of a trade or business, and, therefore, *306 taxable as ordinary income. Findings of Fact Some of the facts have been stipulated and they are hereby incorporated by this reference. Harold C. Smith and Maude A. Smith, husband and wife, are residents of Concord, Massachusetts. They filed a joint Federal income tax return for 1955 with the district director of internal revenue at Boston, Massachusetts. Kenneth P. Martin and Helen A. Martin, husband and wife, are residents of Concord, Massachusetts. They filed a joint Federal income tax return for 1955 with the district director of internal revenue at Boston, Massachusetts. On November 7, 1936 Lewis M. Adams and Catherine E. Adams, husband and wife, received title by a deed of conveyance to 57 acres of land in Concord, Massachusetts. The buildings on this property consist of an 18 room house, garage and accessory buildings. Lewis and Catherine resided there until 1940, in which year they moved to Florida. Petitioners Maude A. Smith and Helen A. Martin are the daughters of Lewis M. Adams. On December 31, 1945 Lewis and Catherine conveyed this property in Concord, Massachusetts, to The Colonial Press, Inc. (hereinafter called Colonial) for $42,222.50, of which $24,050 was *307 allocated by Colonial on its books to the house and land, and $18,172.50 was allocated to the furniture and other furnishings. The conveyance was made to Colonial so that Lewis and his wife could avoid payment of Massachusetts State income taxes. Colonial is a Massachusetts corporation with its principal place of business at Clinton, Massachusetts, approximately 20 miles from Concord. Throughout the year 1950 and to and including 1955, Harold C. Smith was president and Kenneth P. Martin was vice president of Colonial, and both, together with their respective wives, were directors of the corporation. Lewis M. Adams was at that time chairman of the board of directors. There were no other directors. The common stock of Colonial is in the name of Lewis and his wife, Catherine, as trustees under a voting trust, and the voting trust certificates are divided equally between members of the Smith family and members of the Martin family. Colonial held title to the property from December 31, 1945 until February 21, 1950, on which date Colonial conveyed the property to Maude A. Smith and Helen A. Martin, who, together, paid $22,349.25 by a check drawn on a joint bank account maintained by *308 them since 1936 for investment purposes, and assumed a mortgage of $11,000, for a total consideration of $33,349.25. Colonial realized a gain of $142.95 on the sale of the property. During the time Colonial held title to the property an editor associated with Colonial resided in the house for about one year; Lewis and Catherine resided there briefly; and Kenneth P. Martin and his wife resided there from the fall of 1949 until early in 1951. After Kenneth and his wife moved out, no immediate effort was made to find an occupant for the house. In 1953 or 1954 the house was rented to an employee of Colonial for about five months. Harold C. Smith, acting for the two owners of the property, tried to sell the complete property through three real estate agents and was offered $32,000 by one of them, which Harold rejected as too low. Harold then offered to sell the property for $50,000 to this same real estate agent, but it was not accepted. Early in 1953 it was decided to subdivide a part of the property into lots. John S. Kendrick, a landscape engineer, was employed to design a layout for the subdivision of part of the property into individual lots. Later in the same year a firm of civil *309 engineers was also employed to prepare a subdivision plan, called Adams Estates, for a part of the property. A detailed subdivision plan showing 10 one-acre lots was prepared and submitted for approval to the Concord Planning Board in December 1953. After their approval was obtained, the following amounts were expended for improvements to the property in 1954 and 1955: 1954
1955
Surveyors' fees
$ 946.00
$1,140.52
Water System and Sewers
4,742.83
0
Roads
6,000.00
7,003.00
Miscellaneous
10.48
228.45
$11,699.31
$8,371.97
A copy of the subdivision plan was left by Harold Smith with each real estate agent in Concord. In 1953 an unsolicited sale of one lot was made for the amount of $7,500. In 1954 three lots were sold for $14,540, and in 1955 four lots were sold for $20,503.30. [1] Gain realized from the sale of lots and the portion reported on their income tax returns by Maude A. Smith and Helen A. Martin is as follows: Gain Reported
50%
50%
Maude A.
Helen A.
Year
Gain
Smith
Martin
1953
$ 780.00
$ 390.00
$ 390.00
1954
1,450.14
725.07
725.07
1955
10,337.05
5,168.52
5,168.53
*310 About May 1955 the same firm of civil engineers was employed to prepare a further subdivision plan and ultimately the firm prepared plans for the entire property. In the years 1956 through February 1960, the following lots were sold: Number
Cost of Land and
Selling
Gain
Year
of Lots
Gross Sales
Improvements
Expense
(or Loss)
1956
5
$37,220.00
$44,830.95
$3,000.00 *
[10,610.95)
1957
4
26,447.80
1,691.84
1,968.25
22,787.71
1958
5
31,605.07
3,517.93
28,087.14
1959
3
19,067.50
1,628.87
17,438.63
1960
2
14,257.50
1,000.00 *
13,257.50
In the joint income tax return filed by Kenneth P. and Helen A. Martin for the year 1955 there was reported gross income of $75,304.72 which included salary received by Kenneth from The Colonial Press, Inc. of $25,499.92 and from its subsidiary, C. H. Simonds Company, of $8,500. The same return reported Helen's income from a trust in the sum of $28,562.13. In the joint income tax return filed by Harold C. and Maude A. Smith for the year 1955 there was reported gross income of $70,120.97 which included salary received by Harold from The Colonial Press, Inc. of $25,499.92 *311 and from its subsidiary, C. H. Simonds Company, of $8,500. The same return reported Maude's income from a trust in the sum of $24,800.87. Respondent's determination that the gains realized in 1955 from the sale of lots ($5,168.53 reported in each joint return) constituted ordinary income, gives rise to the deficiencies in these consolidated cases. Opinion The parties agree the sole issue to be decided in these consolidated cases is whether the lots sold in 1955 constituted "property held by [Maude and Helen] primarily for sale to customers in the ordinary course of [their] trade or business", ( sec. 1221(1), Internal Revenue Code of 1954) or whether the sales were of capital assets, with the gains taxable as capital gains. The parties seem to agree that section 1237, Internal Revenue Code of 1954, has no application or at least is not to be considered. The said section permits taxpapers qualifying under it to sell real estate from a single tract after subdividing and sales activities, without all of the gains being treated as ordinary income. We think respondent correctly interprets this section where he states in his regulations *312 (Income Tax Regulations § 1.1237-1(a)(4)) that the section is "not exclusive" and "* * * even though the conditions of section 1237 are met, the rules of section 1237 are not applicable if without regard to section 1237 the real property sold would not have been considered real property held primarily for sale to customers in the ordinary course of his business." In the trial of this case petitioners' counsel stated at the outset that they did not elect "to proceed and to accept the provisions of" section 1237, and respondent's counsel noted that "petitioners concede that Section 1237 is not applicable * * *." The said section was not mentioned or referred to again in the trial or on briefs by either party so our discussion and conclusion will be without regard to said section 1237 or whether petitioners might or did meet conditions of qualification thereunder. The issue is one of fact, and it turns upon the consideration of several factors. In W. T. Thrift, Sr., 15 T.C. 366, this Court enumerated these factors, as follows: The governing considerations have been the purpose or reason for the taxpayer's acquisition of the property and in *313 disposing of it, the continuity of sales or sales related activity over a period of time; the number, frequency, and substantiality of sales, and the extent to which the owner or his agents engaged in sales activities by developing or improving the property, soliciting customers, and advertising. * * * No one of these factors can be regarded as determinative, nor will they be of the same weight they might have in another factual background. James G. Hoover, 32 T.C. 618. Maude and Helen did not acquire the property in 1950 for the purpose of subdivision and sale. The decision to sell the property was some three years later and the decision to sell by subdivided one-acre plots was made after efforts to sell the entire property for $50,000 failed. Neither Maude nor Helen nor their husbands had had any experience in the real estate business and none of them held real estate licenses. Harold Smith and Kenneth Martin were full-time executives of Colonial, and a subsidiary corporation (with the same office location), with annual salaries in excess of $33,000. Actually, Harold Smith acted for the owners in the venture. It was his visit with an architect friend at a social *314 gathering in 1953 that first suggested the plan of selling the property by subdivided lots. All of the details were handled by the landscape architect or other real estate men who appeared before the Planning Board and the sales were handled by real estate men. Smith testified in 1954 he probably spent two or three hours a week in connection with the subdivision and sale of the property and after that about half an hour a week with regard to the subdivisions and sales. The record here shows total expenditures of $10,742.83 for roads, water system and sewers in 1954, and three lots sold that year for $14,540. But the evidence is that the improvements were the basic minimum required by the Planning Board and one of the lot sales that year was unsolicited. In the year before there was but one lot sale, unsolicited, for $7,500. In 1955, the year in question, there were four lots sold for a total of $20,503.30 and expenditures of $7,003 for roads, water system and sewers. Platting and subdividing property into lots and constructing streets and installing water mains and culverts is some evidence the property owners are entering the real estate business. The strength of such evidence *315 as indicating a business depends somewhat on the size of the investment in improvements and the frequency of sales. Under the record here the improvement investment was not large and the pace of lot sale was gradual, throughout the years before and during the year in question. Subsequent years involve an additional plat and subdivision and though the investment in improvements increased, there was almost no increase in the frequency of lot sales per year. We feel all of this evidence is consistent with petitioners being, in the year 1955, in the gradual sale or liquidation of a capital asset in the most advantageous manner, without their entry into the real estate business. Some of the cases in this area, in holding that a business existed, emphasize the fact that the taxpayer's only source of income during the litigated years was from the sale of real estate. Here, the owners of the property were housewives and they left the active management of this property to Harold Smith. It is stipulated that Maude and Helen each realized gain from the sale of lots in 1953, 1954 and 1955 in the respective amounts of $390, $725.07 and $5,168.52. In 1955 Maude filed a joint income tax return *316 with her husband and it showed an adjusted gross income of $70,120.97. Included in this total was $24,800.87 which Maude received in 1955 as beneficiary from a trust. Similarly, Helen filed a joint return for 1955 with her husband and it showed an adjusted gross income of $75,304.72. A portion of this total was the amount of $28,562.13 which Helen received in 1955 as beneficiary of a trust. The relationship of Maude's and Helen's other income to the gains derived from lot sales rather supports their contention neither they nor their husbands, for them, were in the real estate business. James G. Hoover, supra. We hold that the petitioners, Maude and Helen, did not hold the lots sold in 1955 primarily for sale to customers in the ordinary course of their trade or business, and that the gain realized by them from the sale of such lots in 1955 is taxable as long-term capital gains. Because of uncontested adjustments in Docket No. 74792 Decision will be entered under Rule 50 in Docket No. 74792. Decision will be entered for petitioners in Docket No. 74822. Footnotes
1. This amount includes $503.30 for miscellaneous items.↩
*. Estimated↩